United States District Court
Eastern District of Michigan
Southern Division

| | |
|---|---|
| United States of America, | Case No. 17-CR-20406 |
| v. | Honorable Paul D. Borman |
| D-5 Keith Mickens, | Violation: **Conspiracy to Violate the Labor Management Relations Act** (18 U.S.C. § 371) |
| Defendant. | |

### Third Superseding Information

The United States Attorney charges:

### General Allegations

At times relevant to this Third Superseding Information:

1. The Labor Management Relations Act, commonly known as the Taft Hartley Act, prohibited employers and persons acting in the interest of employers from paying, lending, or delivering, or agreeing to pay, lend, or deliver, any money or other thing of value to any officer or employee of a labor organization representing its employees.

1

2. The Labor Management Relations Act also prohibited any officer or employee of a labor organization representing the employees of an employer from receiving, accepting, or agreeing to receive or accept, any money or other thing of value from that employer or from any person acting in the interest of that employer.

3. One of the purposes of the Labor Management Relations Act was to combat the corruption of the collective bargaining process that occurs when a union employer gives something of value to a union representative.

**Relevant Organizations**

4. Fiat Chrysler Automobiles US LLC was an automotive company based in Auburn Hills, Michigan, and the successor to the automotive company formerly known as Chrysler Group LLC. Both are referred to here as "FCA." FCA manufactured and sold automobiles in the United States under brands such as Chrysler, Jeep, Dodge, and Ram. FCA was an employer in an industry affecting interstate commerce and subject to the Labor Management Relations Act, 29 U.S.C. §§ 142 & 152.

5. The International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America (UAW) was a labor organization based in Detroit, Michigan. The UAW represented tens of thousands of non-

managerial employees employed by FCA at numerous locations in Michigan and across the United States. The UAW was a labor organization subject to the Labor Management Relations Act, 29 U.S.C. §§ 142 & 152.

6. The UAW-Chrysler Skill Development & Training Program d/b/a the UAW-Chrysler National Training Center (NTC) was a tax-exempt corporation based in Detroit, Michigan. The NTC purported to function as a labor management committee under the Labor Management Relations Act, 29 U.S.C. § 186(c)(9). The stated purpose of the NTC was to provide for the education, training, and retraining of workers.

7. The governing body of the NTC was known as the Joint Activities Board. The Vice President of Employee Relations of FCA and the Vice President of the Chrysler Department of the UAW served as the Chairmen of the NTC Joint Activities Board. The remainder of the Joint Activities Board was made up of senior officials from the UAW and executives from FCA.

### Collective Bargaining Agreements between FCA and the UAW

8. Approximately every four years FCA and the UAW engaged in national negotiations resulting in a collective bargaining agreement that set wages, attendance policies, profit sharing, ratification bonuses, holidays, and other working conditions for FCA employees represented by the UAW.

9. In 2011 and 2015, UAW and FCA held national negotiation sessions that resulted in ratified collective bargaining agreements covering tens of thousands of FCA employees represented by the UAW.

### Relevant Persons

10. **Keith Mickens** was a UAW employee who served as a senior official in the UAW Chrysler Department from 2010 through 2015. As a senior UAW official in the Chrysler Department, **Keith Mickens** was responsible for negotiating and administering the collective bargaining agreements between the UAW and FCA on behalf of tens of thousands of FCA employees represented by the UAW. In 2011, **Keith Mickens** served as a member of the UAW national negotiating committee responsible for the collective bargaining agreement between the UAW and FCA.

11. General Holiefield was an elected UAW officer who served as the UAW Vice President for the Chrysler Department from 2006 through 2014. As the UAW Vice President, Holiefield had primary responsibility for negotiating with FCA and for administering the collective bargaining agreements between the UAW and FCA on behalf of tens of thousands of FCA employees represented by the UAW. As UAW Vice President, General Holiefield was responsible for managing the UAW's relationship with FCA. Holiefield was the senior UAW

official responsible for resolving disputes and grievances that arose under the collective bargaining agreements between the UAW and FCA.

12. D-4 Virdell King was a UAW employee who served as a senior official in the UAW Chrysler Department from 2008 until she retired in February 2016. As a senior UAW official in the Chrysler Department, Virdell King was responsible for negotiating and administering the collective bargaining agreements between the UAW and FCA on behalf of tens of thousands of FCA employees represented by the UAW. In 2011 and 2015, Virdell King served as a member of the UAW national negotiating committee responsible for the collective bargaining agreements between the UAW and FCA.

13. D-2 Alphons Iacobelli was the FCA Vice President for Employee Relations and a person acting in the interest of employer FCA from 2008 through 2015. As the FCA Vice President for Employee Relations, Alphons Iacobelli was the senior FCA official responsible for negotiating with the UAW and for administering the collective bargaining agreements between FCA and the UAW. As the FCA Vice President for Employee Relations, Alphons Iacobelli was FCA's lead representative for labor relations and managed FCA's relationship with the UAW. Alphons Iacobelli was the senior FCA official responsible for resolving

disputes and grievances that arose under the collective bargaining agreements between FCA and the UAW.

14. D-1 Jerome Durden was a Financial Analyst in FCA's Corporate Accounting Department. From 2008 through 2015, Jerome Durden was the controller of the NTC and served as the secretary of the NTC Joint Activities Board.

15. FCA-7 was a member of the FCA Employee Relations Department from 2007 through 2016. FCA-7 was directly involved in negotiating with the UAW and responsible for administering the collective bargaining agreements between FCA and the UAW.

16. FCA-11 was a member of the FCA Employee Relations Department from 2007 to 2015.

17. All dates in this Third Superseding Information are alleged to have occurred on or about the stated dates.

## Count One

### (18 U.S.C. § 371 – Conspiracy to Violate the Labor Management Relations Act)

1. Paragraphs 1 through 17 of the General Allegations are incorporated by reference here.

6

2.     Between in or about 2010 through 2015, within the Eastern District of Michigan and elsewhere, **Keith Mickens**, General Holiefield, Virdell King, Alphons Iacobelli, Jerome Durden, and other individuals and entities known and unknown to the United States Attorney, did knowingly and voluntarily conspire to violate the Labor Management Relations Act. The objects of this conspiracy were:

(a) that one or more persons acting in the interest of employer FCA would willfully pay and deliver—and agree to pay and deliver—money and things of value to officers and employees of the UAW, the labor organization representing its employees, using the NTC with the intent to benefit persons who they knew were not permitted to receive the money and things of value, in violation of Title 29, United States Code, Section 186(a)(2), (d)(1); and

(b) that officers and employees of the UAW would willfully request, receive, and accept—and agree to receive and accept—money and things of value from employer FCA and one or more persons acting in the interest of FCA, using the NTC with the intent to benefit themselves and other persons who they knew were not permitted to receive the money and things of value, in violation of Title 29, United State Code, Section 186(b)(1), (d)(1).

3. Over the course of the conspiracy, FCA Vice President Alphons Iacobelli, FCA Financial Analyst Jerome Durden, FCA Director FCA-7, FCA Senior Manager FCA-11 and other co-conspirators acting in the interest of employer FCA, unlawfully paid and delivered more than $1,000 in prohibited payments and things of value, directly and indirectly, to UAW Vice President General Holiefield, senior UAW official **Keith Mickens**, senior UAW official Virdell King, and other UAW officials. The prohibited payments and things of value included thousands of dollars in personal travel, electronics, designer clothing, luggage, and golf equipment.

### UAW-Chrysler National Training Center

4. FCA Vice President Alphons Iacobelli, FCA Financial Analyst Jerome Durden, and their co-conspirators used NTC bank accounts and NTC credit card accounts to conceal prohibited payments and things of value paid and delivered to UAW Vice President General Holiefield, senior UAW official **Keith Mickens**, senior UAW official Virdell King, and other UAW officials.

5. FCA Vice President Alphons Iacobelli was the Co-Chairman of the NTC and the NTC Joint Activities Board from 2008 through 2015. FCA-7 was a member of the FCA Employee Relations Department who served on the NTC Joint Activities Board from 2007 until 2015. FCA-11 was a member of the FCA

Employee Relations Department who served on the NTC Joint Activities Board from 2010 to 2015. FCA Financial Analyst Jerome Durden was a member of the FCA Corporate Accounting Department who served as the controller of the NTC from in and before 2008 through 2015.

6. FCA provided the funding for the NTC. From 2009 to 2014, FCA made annual transfers to the NTC of between approximately $13 million and approximately $31 million per year. During that time period, FCA Vice President Alphons Iacobelli, FCA-7, FCA-11, and FCA Financial Analyst Jerome Durden controlled the finances and spending of the NTC.

7. The stated purpose of the NTC was to provide for the education, training, and retraining of FCA workers. However, FCA Vice President Alphons Iacobelli, FCA-7, FCA-11, FCA Financial Analyst Jerome Durden, and others acting in the interest of employer FCA, directed thousands of dollars in NTC funds to pay for personal travel, personal purchases and personal expenditures of UAW Vice President General Holiefield, senior UAW official **Keith Mickens**, senior UAW official Virdell King, other UAW officials, and their associates and family members.

8. In and after 2012, FCA Vice President Alphons Iacobelli directed FCA Financial Analyst Jerome Durden to obtain credit cards for UAW Vice

9

President General Holiefield and for other senior UAW officials. The credit cards were issued through accounts maintained in the name of the NTC and were paid for with funds provided by FCA. FCA Vice President Alphons Iacobelli, FCA Financial Analyst Jerome Durden, and their co-conspirators used the NTC credit cards to conceal prohibited payments and things of value paid and delivered to UAW Vice President General Holiefield, senior UAW official **Keith Mickens,** senior UAW official Virdell King, and other UAW officials.

9. In and after 2012, Alphons Iacobelli and others acting in the interest of employer FCA encouraged and authorized UAW Vice President General Holiefield and other senior UAW officials to use the NTC credit cards to pay for personal purchases and personal expenditures.

## Overt Acts

10. One or more members of the conspiracy completed one or more of the following acts to effect the object of the conspiracy:

11. In May 2011, senior UAW official **Keith Mickens** and others arranged for the girlfriend of UAW Vice President General Holiefield to fly from Michigan to California at a cost of over $2,100. FCA Vice President Alphons Iacobelli, FCA Financial Analyst Jerome Durden, and other FCA executives acting in the interest of FCA approved of the expenditure of more than $2,100 to pay for

personal travel by the girlfriend of UAW Vice President General Holiefield. The first-class airfare was paid for by the NTC using funds provided by FCA.

12. In and after 2011, FCA executives gave NTC credit cards to UAW Vice President General Holiefield, senior UAW official **Keith Mickens**, senior UAW official Virdell King, and other UAW officials.

13. In and after 2012, FCA Vice President Alphons Iacobelli encouraged UAW Vice President General Holiefield and other senior UAW officials to use their NTC credit cards for personal purchases and expenses.

14. In February 2012, FCA Financial Analyst Jerome Durden directed that payments for credit card expenses were to be screened from the members of the NTC accounting staff.

15. From 2012 through 2015, UAW Vice President General Holiefield, senior UAW official **Keith Mickens**, senior UAW official Virdell King, and other UAW officials made personal purchases on their NTC credit cards. The personal purchases were authorized by FCA Vice President Alphons Iacobelli, FCA Financial Analyst Jerome Durden, and other FCA executives acting in the interest of FCA, and were paid for using funds provided by FCA.

16. In January 2013, senior UAW official Keith Mickens used his NTC credit card to purchase of over $1,000 worth of luggage from a store located in

Detroit, Michigan.

17. From 2012 through June 2014, senior UAW official **Keith Mickens** used his NTC credit card to make more than $6,500 in personal purchases, including electronics, designer clothing, and golf equipment for himself and for other UAW officials.

All in violation of Title 18, United States Code, Section 371.

MATTHEW SCHNEIDER
United States Attorney

_____
Bruce C. Judge
Assistant United States Attorney

_____
Erin S. Shaw
Assistant United States Attorney

_____
Charles J. Kalil II
Assistant United States Attorney

Date: February 5, 2018

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number<br>17-CR-20406 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes  ☒ No | AUSA's Initials: BCJ |

**Case Title:** USA v. D-5 Keith Mickens

**County where offense occurred:** Wayne County, Macomb County and Oakland County

**Check One:** ☒ Felony    ☐ Misdemeanor    ☐ Petty

___Indictment/___Information --- no prior complaint.
___Indictment/___Information --- based upon prior complaint [Case number:              ]
___Indictment/ ✓ Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** 17-CR-20406        **Judge:** Paul D. Borman

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☒ Embraces same subject matter but adds the additional defendants or charges below:

| Defendant name | Charges | Prior Complaint (if applicable) |
|---|---|---|
| D-5 Keith Mickens | 18 U.S.C. § 371 | N/A |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

February 6, 2018
       Date

BRUCE C. JUDGE
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI 48226-3277
Phone: 313-226-9122
Fax: 313-226-3413
E-Mail address: Bruce.Judge@usdoj.gov
Attorney Bar #: CA 148805

---

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.

5/1